IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MIA LYNN COUSETT,<br><br>    Defendant. | Case No. 3:19-CR-30073-NJR-1 |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are the motions *in limine* filed by Plaintiff, the United States of America, and Defendant, Mia Lynn Cousett. The Court held a Final Pretrial Conference on February 4, 2020, and heard argument on several of the motions. The Court now rules as follows.

**I.    Legal Standard**

A federal district court's authority to rule on motions *in limine* is derived from its inherent authority to manage the course of a trial. *D.W.K. v. Abbott Labs., Inc. (In re Depakote)*, 87 F. Supp. 3d 916, 920 (S.D. Ill. 2015) (citing *Luce v. United States*, 469 U.S. 38, 41, n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)). A motion *in limine* performs a gatekeeping function by allowing a trial judge to eliminate evidence "that clearly ought not be presented to the jury" because it would be inadmissible for any purpose. *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Additionally, motions *in limine* are designed to "avoid the delay and occasional prejudice caused by objections and offers of proof at trial." *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999).

A federal district court reserves the power to make evidentiary rulings throughout a trial, and "may even adjust its disposition of a motion *in limine* during the course of a trial." *Empire Bucket, Inc. v. Contractors Cargo Co.*, 739 F.3d 1068, 1071 n.3 (7th Cir. 2014) (citing *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006)). *See also United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Thus, a denial of a motion *in limine* does not mean that all evidence considered by the motion will be admitted at trial. *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp 1398, 1400 (N.D. Ill. 1993).

## II. Government's Motion *in Limine* No. 1

In its first motion *in limine* (Doc. 21), the Government asks the Court for an order allowing it to present an edited version of Cousett's recorded interview[1] to the jury. (Doc. 21, p. 2). Specifically, the Government is requesting to stop Cousett's interview at 10:24:50, the moment where Michael Heath, an Inspector with the Social Security Administration's Office of the Inspector General,[2] discusses three possible legal outcomes of her case. Heath stated that the U.S. Attorney's Office could: (1) decline to prosecute Cousett as long as she cooperated and paid restitution; (2) recommend pretrial diversion; or (3) prosecute her. The Government is requesting this motion *in limine* for two reasons. First, it argues that Heath's statements are not relevant under Federal Rule of Evidence (FRE) 401 and therefore inadmissible under FRE 402. The Government asserts the statements are irrelevant as they do not make the fact that "Defendant stole government funds . . . more or less likely." (Doc. 21, p. 3). In addition, Heath's statements have no bearing on the veracity of Cousett's admissions given the fact that his statements were

---

[1] The recorded interview is attached to the Plaintiff's First Motion *in Limine* and labeled as "Exhibit A."
[2] Detective Andrew Pierson with the Alton Police Department was also present during this interview.

made after Cousett's oral admissions. (Doc. 21, p. 3). Second, the Government argues, the statements are unfairly prejudicial under FRE 403. The Government contends that the statements could mislead jurors or confuse issues at trial, inviting possible jury nullification even if the United States meets its burden of proof. (Doc. 21, p. 4).

Cousett opposes the Government's first motion *in limine* for three reasons. First, Cousett argues that Heath's statements rendered her confession involuntary and, thus, inadmissible under 18 U.S.C. § 3501(a). (Doc. 29, pp. 1-2). In the alternative, if the Court concludes her confession was voluntary, 18 U.S.C. § 3501(a) permits Cousett to present the circumstances of her confession to the jury to show that the confession was coerced. (Doc. 29, p. 3). Heath's statements are crucial to this presentation. Third, under FRE 106, the Rule of Completeness, showing the rest of Cousett's interview will explain and give context to the admitted portion of the interview, avoid misleading the jury, and ensure a fair and impartial understanding by the jury.

In reply, the Government argues that Cousett's statements were voluntary because they were not procured by any threats or promises. (Doc. 35, p. 5). It also emphasizes that her statements were the product of her rational intellect and free will under the totality of the circumstances and that her statements must have been voluntary because Heath's comments on the possible legal outcomes of her case—the possibility of non-prosecution in particular—did not occur until after her initial admissions. (Doc. 35, p. 9). Furthermore, under Seventh Circuit precedent, Heath's statement that he will bring Cousett's cooperation to the attention of the Government does not render her oral and handwritten statements involuntary.

The Government also asserts that Heath's statement concerning "possible non-prosecution" is irrelevant to the issue of voluntariness and should not be presented to the jury. (Doc. 35, p. 10). It further refutes Cousett's argument on the Rule of Completeness, stating that Heath's comments on the possibility of non-prosecution and cooperation are neither explanatory nor relevant to the admitted portion of the interview. (Doc. 35, p. 12). Lastly, the Government suggests that Cousett's true purpose in seeking to admit Heath's comments is to further a jury nullification defense. (Doc. 35, p. 10).

### A. **Voluntariness of Defendant's Statements under § 3501**

The Court first addresses the voluntariness of Cousett's statements. "[O]nce a judge determines that a confession is voluntary, the confession may be presented to the jury, but the court must instruct the jury to make a determination as to what weight, if any, to give the confession." *United States v. Broeske*, 178 F.3d 887, 889 (7th Cir. 1999) (citing 18 U.S.C.S. § 3501(a)).

A confession is voluntary "if the government demonstrates that under the totality of the circumstances and by a preponderance of the evidence that it was not secured through psychological or physical intimidation but rather was the product of a rational intellect and free will." *United States v. Montgomery*, 14 F.3d 1189, 1194 (7th Cir. 1994). The crucial question is whether the defendant's will was overborne at the time he confessed, and the answer lies in whether the authorities obtained the statement through coercive means. *Id.* The court should consider the issue of official coercion from the perspective of a reasonable person in the defendant's position at the time of the statement. *Id.* Specifically, the court must consider "the age of the defendant, her education, the nature

of the questioning, the use of physical punishment, whether the defendant was read her rights, the duration of the questioning, the defendant's prior experience with police, and whether the defendant was under the influence of drugs or alcohol." *Id.*

In this case, the Court finds that Cousett's statements were voluntary, as her statements were not extracted by any threats or false promises. Cousett was a 32-year-old U.S. Postal Service letter carrier at the time of the interview. (Doc. 35, p. 8; Ex. A, 10:15:13). She voluntarily gave consent to the interview. (Ex. A, 10:09:38). There was no use of physical punishment or intimidation during the interview and no indication that she was under the influence of drugs or alcohol. *See* Ex. A.

Furthermore, Cousett was not "in custody" at the time of her interview. A person is "in custody" for *Miranda* purposes if there was a formal arrest or a restraint on his or her freedom of movement of the degree associated with a formal arrest. *United States v. Ambrose*, 668 F.3d 943, 954 (7th Cir. 2012). "In determining whether a person is in custody, the court's first step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." *United States v. Borostowski*, 775 F.3d 851, 859 (7th Cir. 2014).

Although her interview occurred at the Alton Police Department, Cousett voluntarily consented to speak to the officers (Ex. A, 10:09:38). She was informed that she was not under arrest, she was free to leave at any time, she was not going to jail, and the door was open. (Ex. A, 10:09:38-10:10:50). There was no threatening presence of several officers or a display of weapons or physical force. *(Id.)*. Cousett was not deprived

of any documents needed to depart, and the officers' tone of voice was not in such a way that their requests would likely be obeyed. *Ambrose*, 668 F.3d at 954. *See* Ex. A.

Moreover, while Cousett claims "it was the proverbial carrot—not the stick—which rendered her confession involuntary," the Court agrees with the Government that Heath did not mention the possibility of non-prosecution until after Cousett had made an oral confession to the alleged acts. Accordingly, the Court finds that Cousett's oral statements were voluntary.

### B. **Relevancy and Prejudicial Nature of Heath's Statements**

Because the Court has found that Heath's statements did not render Cousett's oral confession involuntary, the Court next determines whether the disputed portion of the video is relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, and if its exclusion would leave a chronological void in the story." *Wilson v. Groaning*, 25 F.3d 581, 584-585 (7th Cir. 1994) (citing FED. R. EVID. 401). Another test for relevancy is whether leaving out the evidence could leave the jury with "an unduly sanitized and incomplete version of the facts." *Wilson*, 25 F.3d at 584.

Here, Heath's statements are not relevant to whether Cousett stole government funds or committed identity theft; Cousett already discussed those issues with Heath before he made any comments about the potential outcomes of her situation. Furthermore, stopping the interview at 10:25:22[3] will not leave a chronological and

---

[3] The United States requests that the video be stopped at 10:24:50; however, Heath's statements about Cousett's possible legal outcomes do not begin until 10:25:22.

conceptual void in the story, nor will it leave the jury with an unduly sanitized and incomplete version of the facts. Thus, the Court finds that the comments are not relevant and should be excluded under FRE 402.

Even if Heath's statements regarding the possible legal outcomes of Cousett's case were relevant, they would be unfairly prejudicial under FRE 403. Trial judges can "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." (*Holmes v. South Carolina*, 547 U. S. 319, 326, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)); FED. R. EVID. 403. "Evidence is unfairly prejudicial in the context of Rule 403 if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Common v. City of Chicago*, 661 F.3d 940, 947 (7th Cir. 2011). Here, the jury could question why Cousett was not given pretrial diversion or whether she had the means to pay restitution. The Court wishes to avoid a minitrial on these irrelevant issues and, thus, finds that Heath's comments should be excluded under FRE 403.

### C. Rule of Completeness

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it . . . ." *Ambrose*, 668 F.3d at 954; FED. R. EVID. 103. The rule of completeness holds that a complete statement must be read or heard when "it is necessary to (1) explain the admitted portions, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *Id.*

Heath's statements to Cousett regarding the possible legal outcomes of her case and cooperation are neither explanatory nor relevant to the admitted portion of her interview. *United States v. McCorkle*, 511 F.2d 482, 486-87 (7th Cir.), *cert. denied*, 423 U.S. 826, 46 L. Ed. 2d 43, 96 S. Ct. 43 (1975)). These statements were made after Cousett's admissions. Heath's comments do not explain her prior admissions or place the admitted portion of the interview into context. Excluding Heath's statements and the rest of the video will not mislead the jury or compromise a fair and impartial understanding. Additionally, Heath's statement asking Cousett if she was willing to provide a handwritten statement, in her own words, is not relevant to and does not explain the admitted portion of the interview.

For these reasons, the Court **GRANTS** the Government's Motion *in Limine* No. 1 (Doc. 21). The video will be stopped at 10:25:22.

### III. Government's Motion *in Limine* No. 2

With this motion *in limine* (Doc. 36), the Government seeks to bar any evidence or argument related to the decision to prosecute Cousett or that people in Cousett's position are not typically prosecuted or are charged with lesser offenses. The Government argues that such evidence would be designed to garner sympathy for Cousett and cause the jury to conclude that she is being unfairly prosecuted.

In response, the defense agrees that it will not attempt to introduce any argument that other individuals in Cousett's position are not typically prosecuted or are charged with lesser offenses. The defense maintains its right, however, to argue that the Government is unwittingly prosecuting an innocent defendant.

The Court agrees that any evidence or argument regarding the Government's decision to charge Cousett is irrelevant and, thus, should be excluded. Accordingly, the Government's Motion *in Limine* No. 2 (Doc. 36) is **GRANTED**.

IV. **Government's Motion *in Limine* No. 3**

With this motion (Doc. 37), the United States seeks to bar any argument with regard to a jury nullification defense. Specifically, the Government seeks to exclude any argument that Cousett should be acquitted, not based upon the application of the relevant law to the facts of the case, but because she is being unfairly prosecuted or for some other reason that appeals to the sympathies of the jury.

Cousett acknowledges that it is improper to request jury nullification, but notes that she has a right to trial even if she has no sturdy leg to stand on "but thinks [s]he has a chance that the jury will acquit [her] even if it thinks [s]he's guilty." *DeBartolo v. United States*, 790 F.3d 775, 779 (7th Cir. 2015). The defense also contends that, while Cousett's defense will entail interpretations of facts and law that are diametrically opposed to the Government's interpretations, such differences cannot be considered an invocation of jury nullification. *See, e.g.*, *United States v. Lillie*, 669 F.Supp.2d 903, 908 (N.D. Ill. 2009) (rejecting the government's motion *in limine* as being overbroad when it tried to bar any argument that the defendant had good intentions).

For the reasons stated on the record, this motion is **GRANTED** as to any discussion of jury nullification. The Court **RESERVES RULING**, however, on any specific statements that may arise at trial related to Cousett's good faith or intentions.

## V. Government's Motion *in Limine* No. 4

With this motion (Doc. 38), the Government seeks to bar any mention of possible punishments. The Government notes that Counts 1-12 each carries a maximum sentence of 10 years, with eligibility for probation. Count 13, possessing and using a means of identification of another person without lawful authority, however, carries a mandatory sentence of two years' imprisonment, which must run consecutive to any other sentence imposed. The Government argues that the purpose of introducing such evidence or argument would be to cause the jury to feel sorry for Cousett and acquit her, regardless of whether the United States has proven her guilty beyond a reasonable doubt.

In response, Cousett acknowledges that restrictions on evidence and argument about possible sentences are routinely conceded by the defense. However, she asserts there are three permissible bases for raising sentencing consequences at trial. First, such argument could be admissible to show Cousett's confession was involuntary or to impeach on bias or improper motive of a witness. Second, informing the jury of the need to not send an innocent person to prison is well within the scope of permissible advocacy. Finally, Cousett argues that since the Government chose to prosecute her for aggravated identity theft, no error will occur if the jurors are explicitly told that an aggravated crime carries with it an aggravated penalty.

The Court agrees with the Government that any reference to the specific penalties at stake would be improper; thus, the motion is **GRANTED** as to any references to the punishment Cousett faces if convicted.

## VI. Government's Motion *in Limine* No. 5

With this motion (Doc. 45), the Government seeks to exclude any mention of collateral effects of Cousett's conviction, including her probable loss of employment with the U.S. Postal Service and any general references to a conviction "ruining her life." The Government anticipates playing multiple bank surveillance tapes for the jury that depict Cousett wearing a postal uniform and driving a postal vehicle. The Government also anticipates calling Cousett's current boss, Postmaster Paula Nahrup, as a witness at trial. The Government is concerned that defense counsel may ask Postmaster Nahrup whether Cousett will lose her job as a letter carrier if she is convicted, or whether she will lose any other benefits of federal employment. The Government argues such evidence is irrelevant under FRE 402 because it has no bearing on Cousett's guilt or innocence. And even if it is relevant, it is unfairly prejudicial under FRE 403.

In response, the defense acknowledges limits on references to collateral consequences, but asserts that the Government's motion is overbroad. Instead, Cousett asks the Court to reserve ruling until during the trial, when it would be clear if there is a proper reason for any such evidence or argument. Cousett also wishes to explain the meaning behind certain statements she made.

For the reasons stated on the record, the Court **GRANTS** this motion (Doc. 45) as it pertains to specific questions regarding the collateral consequences of a conviction. The Court **RESERVES RULING**, however, on any evidence or argument that Cousett would not have risked losing her job by committing the alleged offenses. Counsel is **DIRECTED** to advise the Court prior to any questioning on this topic.

**VII. Defendant's Motion *in Limine* to Exclude Social Media Postings**

In her only motion *in limine*, Cousett seeks to prohibit Government from referring to, questioning about, or introducing evidence of her social media postings (Doc. 24). Cousett refers to posts referencing derogatory words, posts mentioning alcohol and excessive drinking, posts with risqué photos of her, and posts referencing money and selling drugs. (Doc. 24, p. 2).

Cousett acknowledges that Facebook postings are sometimes admissible as impeachment evidence, citing *United States v. Bonin*, 932 F.3d 523, 541-542 (7th Cir. 2019) (Doc. 25, p. 2). She argues, however, that her posts are inadmissible because they are not relevant to her guilt or innocence under FRE 401. (Doc. 24, p. 2). Furthermore, under FRE 403, they are inadmissible because their probative value is substantially outweighed by the risk of unfair prejudice, confusion, misleading the jury, creating undue delay, or wasting time. (Doc. 24, p. 3). Cousett also contends that authentication of said Facebook posts might be an issue under Rule 901. (Doc. 24, p. 3; Doc. 25, p. 2). Finally, Cousett argues that the admission of her Facebook postings increases the odds of the jury disregarding the Court's instruction and searching for her on the Internet. (Doc. 25, p. 4).

In its response to Cousett's motion, the Government states that it has no objection to the exclusion of most of her posts, as they irrelevant to the issue at hand and are generally offensive. The Government does object, however, to the exclusion of Facebook posts regarding Cousett's need and/or desire for money and requests that the Court reserve ruling on their admissibility. (Doc. 26, p. 3). The Government does not intend to offer this evidence in its case-in-chief but may do so as impeachment evidence under Rule

404(b) if Cousett refutes a motive for stealing by arguing she had no need to do so. (Doc. 26, p. 3).

As stated on the record, the Court **GRANTS in part and RESERVES RULING in part** on this motion (Doc. 24). Cousett's Facebook posts shall be excluded unless she opens the door to such evidence or testimony.

**IT IS SO ORDERED.**

**DATED: February 4, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**